UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:18-CR-00074-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| FLINT GREEN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the Court is Defendant's Expedited Motion for Sentence Reduction under Amendment 821 [Doc. 54]. The Government filed a Response deferring to the Court's discretion whether to reduce Defendant's sentence and by how much [Doc. 56]. For the reasons stated below, Defendant's motion [Doc. 54] is **DENIED**.

**I.  BACKGROUND**

On July 17, 2019, Defendant pleaded guilty to one count of distributing a mixture and substance containing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) [Docs. 28, 33]. The Probation Office disclosed the Presentence Investigation Report ("PSR") on October 2, 2019 [Doc. 38]. On January 30, 1991, Defendant was convicted of common law robbery and sentenced to 9 months' imprisonment [Doc. 38, ¶ 38]. Then on April 11, 1991, Defendant was convicted of an armed robbery where he robbed the cashier of a Branton's Grocery in South Carolina at gunpoint and was sentenced to 25 years in the South Carolina Department of Correction [Doc. 38, ¶ 37]. He was paroled in October 2000, [Doc. 38, ¶ 37], and in the following six years, he incurred two fraudulent check convictions, [Doc. 38, ¶¶ 39–40], one domestic violence conviction, [Doc. 38, ¶ 41], a conviction for possession of marijuana, driving with a suspended

1

license, and open container violation [Doc. 38, ¶ 42]. None of those convictions earned him criminal history points [*Id.*, ¶¶ 39–42].

Defendant was arrested in November 2006 and convicted on March 20, 2008 of possession of cocaine for sale/delivery and possession of marijuana and sentenced to 20 years' imprisonment [Doc. 38, ¶ 44]. The state paroled him again in April 2012, [Doc. 38, ¶ 44], then less than a year later, he was convicted for unlawful use of a telephone and malicious injury to animals/property when he threatened his sister that he would "lay her out," stated that he "did not care if he went back to prison," and broke her front door handle attempting to force it open [Doc. 38, ¶ 45]. On August 7, 2014, the Johnson City Police Department arrested him for criminal impersonation and possession of drug paraphernalia after he provided a false identity during a traffic stop and officers discovered a digital scale with white residue in his vehicle [Doc. 38, ¶ 46]. On further investigation, law enforcement determined that he had provided the same false identification during a July 2014 traffic stop, leading to an additional criminal impersonation charge [Doc. 38, ¶ 47]. He was convicted of those charges. Later his parole was again revoked in November 2014, [Doc. 38, ¶ 44], and he was imprisoned until March 2017 [*Id.*].

On March 2, 2017, he was again paroled, [Doc. 38, ¶ 44], then began dealing powder and crack cocaine out of his residence by January 2018 [Doc. 38, ¶ 7]. That conduct led to his indictment in this case [*See id.*, ¶¶ 1-2, 6–7; Doc. 1]. Also pending were charges of theft of $10,000 or more and evading arrest based on an incident where police found him in a stolen car and he fled on foot after officers attempted to make contact [Doc. 38, ¶ 53]. He indicated that he used marijuana "daily to weekly or monthly" [Doc. 38, ¶ 73]. He had previously received a court order to attend treatment for marijuana abuse and tested positive three times while in treatment [*Id.*]

The PSR assessed a total of eight points for Defendant's criminal history, plus two "status points" for committing the instant offense while under an existing criminal justice sentence [Doc. 38, ¶¶ 48–50]. His ten points yielded a criminal history category of V, which combined with an offense level of 15 to produce a guideline range of 37 to 46 months [Doc. 38, ¶ 82]. The PSR indicated Defendant's criminal history category may not reflect the seriousness of his criminal history or the likelihood he would reoffend, as it included armed robbery, simple robbery, domestic violence, and fraud, many of which did not receive criminal history points [Doc. 38, ¶ 103]. The Government, however, did not advocate an upward departure [*See* Doc. 45, pg. 1] (arguing for a guideline range sentence). On November 15, 2019, the Court sentenced Defendant to 43 months [Doc. 49, pgs. 1–2]. Though the Court considered the seriousness of Defendant's convictions at sentencing, it declined to depart upward [*See* Doc. 50, pg. 2].

Since Defendant has been in BOP custody, he has not incurred any disciplinary infractions, [Doc. 56-3, pg. 1], and has completed approximately 65 hours of programming [Doc. 56-2]. Nonetheless, he failed or withdrew from the Residential Drug Abuse Treatment Program ("RDAP") and failed to complete the BOP's required drug education program [Doc. 56-1, pg. 1]. The drug education program requires only 12 to 15 hours of programming and correctly answering 70% of the questions on a 10-question exam. *See* Federal Bureau of Prisons, Program Statement 5330.11, § 2.3.6, *available at* https://www.bop.gov/policy/progstat/5330.11.pdf (last accessed July 19, 2024). He has not obtained a GED, and the BOP deemed him "non-promotable" [Doc. 56-1, pg. 1]. The BOP considers him a "medium" recidivism risk [Doc. 56-1, pg. 2]. Defendant is currently housed at RRM Nashville with a projected release date of August 2, 2024. *See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed July 19, 2024).

Effective November 1, 2023, Amendment 821 reduced status points from two to one if

the defendant received 7 or more points under U.S.S.G. § 4A1.1(a)–(d), and eliminated them otherwise. *See* U.S.S.G. § 4A1.1(e). This amendment applies retroactively. U.S.S.G. § 1B1.10(d). The present motion followed.

## II. LEGAL STANDARD

A district court has "no inherent authority … to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). "A district court may modify a defendant's sentence only as provided by statute." *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009). However, 18 U.S.C. § 3582(c)(2) provides: "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The Supreme Court has explained that § 3582(c)(2) requires a "two-step inquiry." *Dillon v. United States*, 560 U.S. 817, 826 (2010). At step one, the Court must "determine that a reduction is consistent with [U.S.S.G.] § 1B1.10." *Id.* A reduction is inconsistent with § 1B1.10 if none of the amendments made retroactive in the policy statement apply to the defendant or would "have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2). In determining what reduction, if any, is appropriate, the Court "determine[s] the amended guideline range that would have been applicable to the defendant if the amendment(s) . . . had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). The Court must "leave all other guideline application decisions unaffected." *Id.* With limited exceptions, "the court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the

4

amended guideline range . . . ." U.S.S.G. § 1B1.10(b)(2)(A). Nor may the "reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

At step two, the Court considers the applicable § 3553(a) factors to determine whether the authorized reduction is appropriate "in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827. "[T]he decision whether and to what extent to grant an authorized sentence reduction is discretionary." *United States v. Monday*, 390 F. App'x 550, 554 (6th Cir. 2010) (citing *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009)). But "proceedings under 18 U.S.C. § 3582(c)(2) and [U.S.S.G. § 1B1.10] do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3).

### III. ANALYSIS

The parties agree Defendant is eligible for a sentence reduction under Amendment 821 [Doc. 54, pg. 4; Doc. 56, pg. 1]. Defendant received 8 criminal history points before applying status points [Doc. 38, ¶ 48]. Applying the new U.S.S.G. § 4A1.1(e), Defendant receives one status point instead of two. His reduced criminal history score of 9 yields a criminal history category of IV, which combines with an offense level of 15 to produce an amended guideline range of 30 to 37 months. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table.

Given that Defendant's projected release date is barely two weeks away, he requests a reduced sentence of time served [Doc. 54, pg. 5]. He argues: (1) the instant offense involved sales of small amounts of drugs, (2) he has worked to rehabilitate himself at the halfway house, and (3) his personal background and characteristics support the requested two-week reduction [Doc. 54, pg. 5]. The Government counters that his post-sentencing conduct has been "mixed," and defers to the Court's discretion whether to reduce Defendant's sentence [Doc. 56, pg. 4].

5

The applicable § 3553(a) factors weigh against a sentence reduction. To Defendant's credit, he has maintained a clean disciplinary record and participated in at least some programming at the BOP [Doc. 56-2; Doc. 56-3, pg. 1]. But he either failed or withdrew from RDAP, despite the Court's recommendation that he participate [Doc. 56-1, pg. 1; *see* Doc. 49, pg. 2]. And, he failed the BOP's required drug education program, which requires a mere 12 to 15 hours of programming and answering 7 out of 10 questions correctly [*See* Doc. 56-1, pg. 1]; Federal Bureau of Prisons, Program Statement 5330.11, § 2.3.6, *available at* https://www.bop.gov/policy/progstat/5330.11.pdf (last accessed July 19, 2024). His unwillingness or inability to complete even the most basic drug education at the BOP presents a recidivism concern given his history of marijuana abuse and the BOP's "medium" recidivism risk determination [*See* Doc. 38, ¶ 73; Doc. 56-1, pg. 2].

Compounding the problem, his criminal history presents a nearly unbroken sequence of committing crimes, going to prison, then committing more crimes within months of getting out, all despite a "good upbringing with no abuse or neglect" [Doc. 38, ¶ 66]. Those crimes included armed robbery, check fraud, domestic violence, and possession of cocaine for sale [Doc. 38, ¶¶ 37, 39–41, 44]. In one incident, he threatened to "lay . . . out" his sister and stated he "did not care if he went back to prison" before attempting to force open her door [Doc. 38, ¶ 45]. Later, he provided the same false identification within just over a month, resulting in additional convictions [Doc. 38, ¶¶ 46–47]. And most recently, law enforcement completed controlled buys from Defendant a mere ten months after receiving parole on his state drug-trafficking offense [Doc. 38, ¶¶ 7–11, 44]. The Probation Office indicated grounds existed which would support an upward departure based on his criminal history category underrepresenting the seriousness of his criminal history [Doc. 38, ¶ 103]. Although the Court ultimately declined to depart upward, the Court also

6

contemplated that Defendant would successfully complete drug programming at the BOP, but he did not.

Defendant argues the amounts involved in the sales were small, [Doc. 54, pg. 5], which is certainly mitigating. But Defendant's guideline range already accounts for the relatively low drug quantity involved in his case [*See* Doc. 38, ¶¶ 21, 82]. And in any event, these drug sales form part of a pattern suggesting a high likelihood that Defendant will reoffend. He indicates he has made efforts at rehabilitation in the halfway house, [Doc. 54, pg. 5], but fails to explain what he has done or how it has supported his rehabilitation.

Defendant also asserts the Government now supports the Equal Act, which would eliminate the disparity in sentencing treatment between crack and powder cocaine [Doc. 54, pg. 5]. However, even if Congress had already enacted such a law, courts applying § 3582(c)(2) must "leave all other guideline application decisions unaffected." U.S.S.G. 1B1.10(b)(1). The Guidelines distinguished between crack and powder cocaine at sentencing, *see* U.S.S.G. § 2D1.1(c)(13) (2018), and the Court is not at liberty to revisit that issue.

In sum, Defendant's criminal history and post-sentencing conduct reveal a lack of respect for the law and significant need to deter Defendant from future criminal activity and protect the public. These factors militate against reducing Defendant's sentence.

### III. CONCLUSION

For the reasons stated herein, Defendant's motion [Doc. 54] is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge